**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| E.M., as natural guardian of J.P., a minor, and in their own right<br><br>Plaintiffs<br><br>v.<br><br>UPPER DARBY SCHOOL DISTRICT, PETER SCHILLER, and JILL PALLADINO<br><br><br>Defendants. | CIVIL ACTION NO. _____<br><br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs, E.M. and J.P., by and through their undersigned counsel Laffey Bucci D'Andrea Reich & Ryan, hereby bring the following Complaint before this Honorable Court and aver the following in support thereof:

**INTRODUCTION**

1.      This is a case about a public school district that watched a thirteen-year-old African American boy be beaten on its own track field — and did nothing.

2.      Beginning in September 2024, J.P., a sixth-grade student with a documented disability and a corresponding Individualized Education Program, was the target of a sustained, racially motivated campaign of bullying, harassment, and physical abuse at Drexel Hill Middle School, in the Upper Darby School District. The bullying took place where it could not have been more visible: in the school's hallways during transitions; in the morning drop-off area where parents and grandparents watched it unfold from their cars; and on the school's own grounds.

1

3.      It was reported — to the Assistant Principal, Defendant Peter Schiller, who served as a member of J.P.'s IEP team and had personal, written knowledge of J.P.'s identity, his disability, and his vulnerabilities; and to the Principal, Defendant Jill Palladino. And it was witnessed firsthand by Defendant Schiller himself, who once stood by, made eye contact with E.M. as she screamed for help in the middle of an ongoing assault, and walked away.

4.      The District's deliberate indifference culminated, foreseeably, on October 7, 2024. That afternoon, on the track field at Drexel Hill Middle School, a student— whom J.P.'s family had identified in reports — and at least three other students surrounded J.P., punched him, kicked him, beat him, and threw him to the ground while shouting racial slurs at him, including the words "nigger," "monkey," and "bitch ass nigga." They beat him twice in succession, in the same location, for approximately eight minutes. At least three Drexel Hill Middle School staff members were present, with a clear and unobstructed view. They did not stop the attack. They did not separate the perpetrators from J.P. They did not call for help. They watched. The assault ended only because an eighth-grade student courageously stepped in and physically separated the perpetrators from J.P. — something no adult on school property did.

5.      The District's response to a racially motivated group assault on a child with a documented disability — captured on its own video footage, documented in writing by the victim's mother, A.P., the next day, attested to in detail by E.M. — was to suspend one student for one day, find "not enough information" against another despite direct eyewitness identification, ignore the racial dimension of the conduct entirely, and let the matter close. The Assistant Principal who had signed onto J.P.'s IEP could not, in the months that followed, be bothered to learn the boy's name.

6.      J.P. has been forced from his school. He has been forced from his school district. He has been forced from the Commonwealth of Pennsylvania entirely in order to obtain a safe

2

education. He has been left with a concussion, post-concussion syndrome, ongoing memory loss, ongoing neurological care, and ongoing therapy for symptoms consistent with depression, anxiety, and post-traumatic stress disorder.

7.     The Upper Darby School District failed him at every step — before the assault, during the assault, and after the assault — and that failure violated his rights under the Equal Protection Clause of the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, and Title II of the Americans with Disabilities Act. This Complaint seeks the redress that the District itself has refused to provide.

## JURISDICTIONAL STATEMENT

8.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C § 1343, which gives district courts original jurisdiction over any civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

9.     This Court has supplemental subject matter jurisdiction over all related state claims herein pursuant to 28 U.S.C § 1367, which gives federal district courts jurisdiction over all other claims related to claims in the action by which the Court has original jurisdiction that are arising out of the same case or controversy under Article III of the United States Constitution.

10.     Plaintiffs bring this action to redress violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*.; Section 504 of the Rehabilitation Act of

1973, 29 U.S.C. § 794; and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Upper Darby School District is located within this District; the individual Defendants reside or work within this District; and the acts and omissions giving rise to the claims set forth in this Complaint occurred within this District.

## **PARTIES**

12.     Plaintiff E.M. is the natural guardian, and legal custodian of J.P., a minor child. E.M. brings this action both on behalf of J.P., as her minor son, and in her own right.

13.     Plaintiff J.P. is a now-thirteen-year-old male and, at all times relevant to this Complaint, was a sixth-grade student enrolled at Drexel Hill Middle School in the Upper Darby School District.

14.     A.P. is the biological mother of J.P.

15.     The identities, addresses, and other personally identifying information of Plaintiffs and A.P. are not stated herein in order to protect J.P., a minor child who has suffered injuries and damages of a sensitive nature as a result of the conduct of Defendants set forth below. Although Federal Rule of Civil Procedure 10 generally requires a Complaint to contain the names of all parties, federal courts in this Circuit have adopted a standard balancing the public's interest in open civil judicial proceedings against the private interests favoring pseudonymity. See *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997); K.W. v. Holtzapple, 299 F.R.D. 438, 442 (M.D. Pa. 2014) (factors favoring anonymity include the risk of retaliatory physical or mental harm, the need to preserve privacy in sensitive and highly personal matters, and the potential deterrence of plaintiffs from pursuing their claims due to fear of harm). Plaintiffs are

filing contemporaneously herewith a Motion to Proceed Under Pseudonym, and Plaintiffs' undersigned counsel will provide Plaintiffs' identifying information to Defendants upon entry of an appropriate order.

16.    Defendant Upper Darby School District ("UDSD") is a municipal entity and public school district in the Commonwealth of Pennsylvania, organized and existing under the laws of Pennsylvania with a principal place of business at 8201 Lansdowne Avenue, Upper Darby, PA 19082-5496. At all times relevant, UDSD was the recipient of federal funds for its operation and the operation of Drexel Hill Middle School. Further, such federal financial assistance was provided to UDSD to accommodate the needs of its students, including Plaintiff J.P.

17.    The Upper Darby School District operates, manages, controls, and supervises Drexel Hill Middle School, located at 3001 State Road, Drexel Hill, Pennsylvania 19026. At all times relevant to this Complaint, Defendant Upper Darby School District was, and remains, a recipient of federal financial assistance for the operation of its schools, including for the operation of Drexel Hill Middle School.

18.    Defendant Peter Schiller, who resides at 16 Broomall Avenue, Broomall, PA 19008-1908, is, and at all times relevant to this Complaint was, the sixth-grade Assistant Principal of Drexel Hill Middle School and an employee, agent, and official of the Upper Darby School District. At all times relevant to this Complaint, Defendant Schiller also served as the Local Education Agency Representative on J.P.'s Individualized Education Program team. Defendant Schiller is sued in his individual capacity.

19.    Defendant Jill Palladino, who resides at 415 Baltimore Avenue, Milmont Park, PA 19033-3208, is, and at all times relevant to this Complaint was, the Principal of Drexel Hill Middle

5

School and an employee, agent, and official of the Upper Darby School District. Defendant Palladinois sued in her individual capacity.

20. At all times relevant to this Complaint, Defendants Upper Darby School District, Schiller, and Palladinoacted by and through their employees, agents, and officials, and acted under color of state law within the meaning of 42 U.S.C. § 1983.

## FACTUAL BACKGROUND

### *J.P.'s Disability and the District's Documented Knowledge of His Vulnerability*

21. Plaintiff J.P. is a now-thirteen-year-old African American male. During the events giving rise to this Complaint, J.P. was a sixth-grade student enrolled at Drexel Hill Middle School, a public middle school owned, operated, managed, controlled, and supervised by Defendant Upper Darby School District.

22. At all relevant times, J.P. qualified for and received special education services from Defendant Upper Darby School District under the primary disability category of Other Health Impairment.

23. Pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., the Upper Darby School District developed and maintained an Individualized Education Program ("IEP") for J.P. that has been in effect at all times relevant to this Complaint.

24. The District's IEP for J.P. expressly documented, among other things: (a) J.P.'s history of traumatic events, which the District's own IEP team determined "impact his ability to appropriately cope and attend to the lesson within the general education environment"; (b) J.P.'s need for specially designed instruction to improve his social skills; (c) J.P.'s need for specially designed instruction to improve his executive functioning; and (d) the District's commitment to provide J.P., on a daily basis and in all instructional environments, with access to a school

counselor and social worker, preferential seating, verbal and non-verbal redirection, positive reinforcement, and other social-emotional supports.

25.    Defendant Peter Schiller, the Assistant Principal of Drexel Hill Middle School, served as the Local Education Agency Representative on J.P.'s IEP team. By virtue of that role, Defendant Schiller had specific, written, personal, and signed-on knowledge of J.P.'s disability, J.P.'s documented social-emotional vulnerabilities, and the protective supports the District had committed to provide him.

26.    Defendant Upper Darby School District was at all relevant times on notice — through its own evaluations, its own IEP team, and the documents it had itself prepared and signed — that J.P. was a student with a documented disability who, by reason of that disability, required heightened support and supervision in the school environment to ensure his safety, his social-emotional well-being, and his equal access to education.

*The Months-Long Pattern of Racially Motivated Bullying at Drexel Hill Middle School*

27.    J.P. became the target of a sustained and escalating campaign of racially motivated bullying and physical abuse at Drexel Hill Middle School, led primarily by a student known to the District as J.H. and joined by other students, including a student known as "Abdullah."

28.    J.P. was bullied, harassed, and physically assaulted by J.H. and other students at Drexel Hill Middle School on numerous occasions.

29.    The bullying took place at predictable, highly visible, and routinely supervised locations on school property: outside the side entrance to the school, where sixth-grade students gathered before entering the building each morning; in the school hallways during scheduled transitions between classes; on the school grounds during arrival and dismissal periods; and on the school's track field during the school day.

30.     J.H. repeatedly struck J.P. while passing in the hallways of Drexel Hill Middle School during scheduled transitions between classes.

31.     Other students at Drexel Hill Middle School also targeted J.P. for ongoing harassment, taking his personal property — including his Chromebook and his lunchbox — and directing racial slurs at him during arrival and dismissal periods.

32.     On one occasion outside the side entrance to the school during morning drop-off, J.H. pushed and shoved J.P. in the immediate presence of J.P.'s mother, A.P., who was forced to exit her vehicle and personally intervene to protect her son because no one from the Drexel Hill Middle School intervened and/or helped.

33.     On a separate occasion outside the side entrance to the school during morning drop-off, in the presence of E.M., J.H. attacked J.P. and pulled J.P.'s hat from his head, threw it on the ground, and forced J.P. to chase after Huber to retrieve it.

34.     During that same incident, J.H. then pulled J.P.'s black zip-up jacket from around J.P.'s waist and struck J.P. repeatedly in the face and chest with the jacket. J.H. then threw the jacket to "Abdullah," who continued to strike J.P. repeatedly in the face, back, and chest with the jacket while E.M. observed this in horror.

35.     The morning drop-off assault witnessed by E.M. was so brazen, prolonged, and visible that she was forced to exit her vehicle and physically intervene.

36.     During the same incident, E.M. shouted to school staff who were just standing there watching, and yelled, in substance, "Look at what is going on here." Defendant Schiller, the Assistant Principal of Drexel Hill Middle School, was in the immediate vicinity at the time. Defendant Schiller made eye contact with E.M. — and then willfully ignored the assault,

pretending not to see or hear what was happening, and took no action to intervene, separate the perpetrators from J.P., reprimand the perpetrators, or report or investigate the incident.

37.    On another occasion, Joseph Huber took J.P.'s backpack and ran away with it, forcing J.P. to chase after him.

38.    The incidents above are not a comprehensive catalog of the bullying J.P. endured at Drexel Hill Middle School. They are representative of a pattern of racially motivated bullying and physical abuse that J.P. suffered at the hands of his peers prior to the October 7, 2024 assault — bullying that took place in plain view, on school property, during school hours, at predictable supervised locations, and, on at least one occasion, in the direct line of sight of Defendant Schiller himself.

### *Reports to Drexel Hill Middle School's Administration and the District's Failure to Act*

39.    Throughout the period of bullying described above, J.P., E.M. and A.P., raised concerns about the racially motivated bullying and physical abuse of J.P. with Drexel Hill Middle School administrators on multiple occasions.

40.    Specifically, concerns about the bullying, racial harassment, and physical abuse of J.P. were reported to Defendant Peter Schiller, the Assistant Principal of Drexel Hill Middle School, and to Defendant Jill Palladino, the Principal of Drexel Hill Middle School, prior to the October 7, 2024 assault.

41.    Notwithstanding these reports — and notwithstanding Defendant Schiller's own eyewitness observation of the morning drop-off assault described above — neither Defendant Schiller, Defendant Palladino, nor any other administrator at Drexel Hill Middle School or Upper Darby School District took any action to investigate, prevent, and/or remediate the racially motivated bullying of J.P. before October 7, 2024.

42.     The District's deliberate indifference — in the face of repeated reports, in the face of incidents visible to ordinary school supervision, and in the face of Defendant Schiller's own eyewitness knowledge — allowed the racially hostile environment at Drexel Hill Middle School to continue unchecked and to escalate in severity, culminating in the violent group assault that followed.

*The October 7, 2024 Racially Motivated Group Assault*

43.     The District's failure to act on the months-long pattern of racially motivated bullying culminated, foreseeably and predictably, in a violent racially motivated group assault on J.P. on the afternoon of October 7, 2024.

44.     The October 7 assault was not spontaneous, and it was not unannounced. Earlier that day, during gym class at Drexel Hill Middle School, J.H. expressly threatened J.P. that he was going to "jump" him.

45.     Within minutes of that warning, after sixth-grade students were released from gym to the track field outside Drexel Hill Middle School, J.H. and a group of fellow students — described by witnesses as J.H.'s "gang" — followed through on the threat.

46.     Between approximately 1:00 PM and 1:30 PM on October 7, 2024, on the track field at Drexel Hill Middle School, J.H. and at least three other male students brutally attacked J.P. They punched him, kicked him, threw him to the ground, and beat him repeatedly as he lay on the artificial turf.

47.     Throughout the assault, the perpetrators repeatedly shouted racial slurs at J.P., including, but not limited to, the words "nigger," "monkey," and "bitch ass nigga."

48.    The attack on J.P. occurred twice, in succession, in the same general location. After the first assault concluded, the perpetrators attacked J.P. a second time — once near the entrance to the track field, and again on the side of the track.

49.    The combined group assault on J.P. lasted approximately eight minutes.

50.    The attack did not end because any adult on school property intervened. It ended because an eighth-grade student courageously stepped in to physically separate the perpetrators from J.P. — something no member of Drexel Hill Middle School's staff did.

*The Three Drexel Hill Middle School Staff Members Who Watched the Assault and Did Nothing*

51.    At least three Drexel Hill Middle School staff members, with supervisory responsibility for the area surrounding the track field, were physically present during the October 7, 2024 group assault on J.P.

52.    These three staff members had a clear, direct, and unobstructed view of the assault. They saw a thirteen-year-old African American boy, with a documented disability, being punched, kicked, beaten, and racially abused on school property by a group of his peers, for approximately eight minutes, twice in succession.

53.    Despite this, not one of the three Drexel Hill Middle School staff members present took any action to stop the assault, separate the perpetrators from J.P., render aid to J.P., summon a school nurse, summon emergency medical services, contact law enforcement, contact J.P.'s family, or otherwise discharge their basic duties of supervision and care.

54.    The three Drexel Hill Middle School staff members did one thing, and one thing only: they watched. They watched while J.P. was struck. They watched while he was kicked. They watched while he was thrown to the ground. They watched while his attackers shouted racial slurs in his face. They watched while a child for whom the Upper Darby School District had developed

11

and signed onto an IEP designed in part to protect his social and emotional well-being was beaten on the District's own track field, in a location for which they bore supervisory responsibility — and they did not move.

55.    The Upper Darby School District is in possession of video footage of the October 7, 2024 assault, and Defendant Schiller has acknowledged the existence of that footage in writing.

*The District's Inadequate and Deliberately Indifferent Response Immediately After the Assault*

56.    Following the assault, despite the severity and obviousness of J.P.'s injuries, no Drexel Hill Middle School staff member contacted law enforcement.

57.    No Drexel Hill Middle School staff member contacted E.M. or A.P. to inform them that J.P. had been attacked on school property.

58.    No medical care was provided to J.P. by Drexel Hill Middle School staff. J.P., bruised and bleeding, reported to the school nurse that he had been "jumped." The Drexel Hill Middle School nurse declined to treat him, telling J.P. she could not do so because he was about to go home.

59.    When E.M. arrived at the school to pick up J.P., she saw immediately what the school had failed even to acknowledge: a large contusion on J.P.'s head, visible shoe prints across his chest, and green and red turf stains on his clothing from where he had been thrown to the ground and brutally attacked while being called racial slurs.

60.    Only after A.P., informed of the attack by E.M. called the police did the Drexel Hill Middle School nurse belatedly appear with an ice pack. Even then, the nurse offered the implausible suggestion that J.P. had been "hit with a ball" — a claim contradicted by J.P.'s own account at the time, by E.M.'s eyewitness observation of his visible injuries, and by the school's own video footage of the assault.

*The District's "Investigation"*

61.    The day after the assault, on October 8, 2024, A.P. contacted Defendant Schiller to report the assault and reiterate the pattern of bullying that had preceded it, which the District was well aware of.

62.    At 2:14 PM on October 8, 2024, Defendant Schiller emailed A.P. a "Bully/Harassment Form" and asked her to fill it out and return it to him directly.

63.    At 4:53 PM that same day, A.P. submitted a detailed written report to Defendant Schiller. Her report identified two specific perpetrators by name (J.H. and "Abdullah"); described the pre-October 7 pattern of bullying; identified specific eye witnessed incidents in the morning drop-off area; described J.H.'s pre-attack threat and warning during gym class that he was "going to jump" J.P.; and described the October 7 assault itself, including the fact that at least 3 teachers were present. A.P.'s written report stated plainly: "My son has been bullied and physically assaulted for at least a month!"

64.    Despite the receipt of this detailed, contemporaneous, written notice from a parent, the District's response was minimal, delayed, racially blind and showed even further their deliberate indifference.

65.    By email dated November 2, 2024 — nearly four weeks after the assault — Defendant Schiller informed E.M. that his "investigation" had concluded that the October 7 incident was a "founded bullying incident" against Joseph Huber, and that Joseph Huber had received a one-day suspension from school.

66.    Defendant Schiller's November 2, 2024, conclusion made no mention of, and did not address, the racial slurs used during the assault, the racial motivation of the assault, bullying and/or harassment, the existence of a racially hostile environment at Drexel Hill Middle School,

13

J.P.'s status as a student with a disability, or the months-long pattern of bullying and assaults that occurred.

67. The Upper Darby School District's response to the racially motivated group assault on a thirteen-year-old African American student with a documented disability — twice attacked, beaten for approximately eight minutes, while school staff watched — was, in sum, to suspend one student for a single day, to find insufficient evidence as to another despite eyewitness identification, and to ignore the racial dimension of the conduct entirely.

68. Defendant Schiller, who had served as the Local Education Agency Representative on J.P.'s IEP team and who therefore had documented knowledge of J.P.'s identity, his disability, and his social-emotional vulnerabilities, did not in the aftermath of the assault even take the time to learn J.P.'s name. On multiple occasions following the assault, Defendant Schiller called J.P. by an incorrect name.

### *J.P.'s Injuries, Damages, and Withdrawal from the Upper Darby School District*

69. As a direct and proximate result of the District's deliberate indifference to the racially motivated bullying, harassment, and physical abuse of J.P. — and as a direct and proximate result of the October 7, 2024 group assault — J.P. has suffered, and continues to suffer, severe physical, psychological, emotional, and educational harm.

70. The physical injuries J.P. sustained on October 7, 2024 included a concussion, widespread bruises and contusions on his head, torso, and legs, and a large contusion on his head consistent with the visible shoe prints across his chest.

71. As a result of the concussion sustained on October 7, 2024, J.P. has been diagnosed with post-concussion syndrome, which manifests in ongoing headaches, vertigo, and notable

memory loss. J.P. has required, and continues to require, ongoing neurological care for the injuries he sustained on October 7, 2024.

72. J.P. has developed symptoms consistent with depression and anxiety, frequent nightmares, and lives in a constant state of fear and emotional distress, raising serious concerns for post-traumatic stress disorder. J.P. has required, and continues to require, ongoing care from a mental health therapist as a direct and proximate result of the abuse he endured at Drexel Hill Middle School.

73. After the October 7 assault, J.P. was so afraid of returning to Drexel Hill Middle School that he could not safely do so. J.P. was transitioned out of the brick-and-mortar school environment entirely and into virtual instruction at home — depriving him of the social, educational, and developmental benefits of in-person education to which he was entitled.

74. Even in the virtual environment, J.P. could not escape the racially hostile environment that Defendants had allowed to develop at Drexel Hill Middle School. One of the students who attacked J.P. on October 7 appeared in J.P.'s virtual classes, making it increasingly difficult for J.P. to concentrate, focus, or feel safe in his own learning.

75. Ultimately, the District's failure to protect J.P. forced his family to withdraw him from Drexel Hill Middle School and the Upper Darby School District entirely and to relocate him to a different school in a different state so that he could pursue his education in a safe environment.

76. As a direct and proximate result of the racially hostile environment that Defendants permitted, ignored, and effectively ratified at Drexel Hill Middle School, J.P. has been effectively denied the benefits of — and equal access to — the educational opportunities to which he was entitled under federal law.

77.     All of the foregoing physical, psychological, emotional, and educational injuries to J.P. were proximately caused by the deliberate indifference, willful and wanton conduct, and acts and omissions of Defendants as set forth in this Complaint, and were not caused or contributed to by any negligence on the part of J.P.

**COUNT I**
**VIOLATION OF 42 U.S.C. § 1983**
**DELIBERATE INDIFFERENCE TO RACE-BASED PEER HARASSMENT IN VIOLATION OF**
**THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT**
**(Plaintiffs v. Upper Darby School District, Peter Schiller, and Jill Palladino)**

78.     Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

79.     This Count is brought pursuant to 42 U.S.C. § 1983, which provides a federal cause of action against any person who, acting under color of state law, subjects another person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

80.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits any State from denying to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. The right of every public-school student of color to attend school free from severe, pervasive, and objectively offensive race-based peer harassment — and to have school officials act, rather than acquiesce, in the face of known racial harassment — is among the rights protected by the Equal Protection Clause and was clearly established at all times relevant to this Complaint

81.     UDSD is apolitical subdivision of the Commonwealth and therefore able to be held accountable pursuant to 42 U.S.C. § 1983.

16

82.     At all times relevant to this Complaint, Defendants Upper Darby School District, Peter Schiller, and Jill Palladinoacted under color of state law within the meaning of 42 U.S.C. § 1983.

83.     Defendants Upper Darby School District, Schiller, and Palladinodeprived J.P. of his clearly established Fourteenth Amendment right to the equal protection of the laws by acting with deliberate indifference to actual knowledge of severe, pervasive, and objectively offensive racially motivated peer harassment, bullying, and physical abuse of J.P. at Drexel Hill Middle School.

84.     By their conduct and under the color of state law Defendant UDSD had knowledge of the constant bullying, verbal and physical abuse, and harassment by the other students at DHMS directed at Plaintiff J.P. specifically because of his race, and had opportunities to prevent the violation of his clearly established constitutional right under the Equal Protection Clause of the Fourteenth Amendment failed to do so acting with deliberate indifference..

### *Defendant Peter Schiller's Personal Deliberate Indifference*

85.     Defendant Schiller, as Assistant Principal of Drexel Hill Middle School and Local Education Agency Representative on J.P.'s IEP team, was an official of the Upper Darby School District vested with the authority — and charged with the responsibility — to protect students from racially motivated harassment and physical abuse on school property and to ensure the District's compliance with the constitutional and statutory duties owed to J.P.

86.     Defendant Schiller had actual knowledge, prior to the October 7, 2024 assault, of the racially motivated bullying and physical abuse of J.P. at Drexel Hill Middle School, including from: (a) reports made to him by E.M. and A.P.; (b) his own direct eyewitness observation of the morning drop-off assault described above, during which Defendant Schiller made eye contact with E.M. as she screamed for staff attention while physically intervening in an ongoing assault on her

17

grandson — and did nothing other then watch and then walk away; and (c) his role as the Local Education Agency Representative on J.P.'s IEP team, which gave him personal, written, and signed knowledge of J.P.'s status as a child with a documented disability requiring social-emotional support and protection.

87.    Notwithstanding this actual knowledge, Defendant Schiller acted with deliberate, callous, and reckless indifference to J.P.'s constitutional rights. He took no action to investigate the bullying; no action to discipline the perpetrators; no action to separate the perpetrators from J.P.; no action to alert other school staff to the known danger to J.P.; and no action to implement the protective supports the District had committed to provide J.P. under his IEP.

88.    After the October 7, 2024 brutal assault, Defendant Schiller compounded his deliberate indifference. He delayed the District's formal "investigation" for nearly four weeks. He imposed only a one-day suspension on J.H. He found "not enough information" against Abdullah, notwithstanding the direct eyewitness identification of Abdullah by E.M. and A.P.'s contemporaneous written report. He failed to investigate or address in any way the racial dimension of the conduct, the racial slurs used during the assault, or the racially hostile environment of which the October 7th assault was the predictable culmination. And in the months that followed, Defendant Schiller could not be bothered to learn J.P.'s name, repeatedly addressing him by an incorrect name.

89.    Defendant Schiller's conduct, individually and in combination, was the direct and proximate cause of the deprivation of J.P.'s clearly established right to equal protection under the Fourteenth Amendment, and was undertaken with deliberate, callous, and reckless indifference to that right.

### *Defendant Jill Palladino's Personal Deliberate Indifference*

18

90. Defendant Palladino, as Principal of Drexel Hill Middle School, was an official of the Upper Darby School District vested with the authority — and charged with the responsibility — to protect students from racially motivated harassment and physical abuse on school property and to oversee the conduct of her subordinate administrators, including Defendant Schiller.

91. Defendant Palladinohad actual knowledge, prior to the October 7, 2024 assault, of the racially motivated bullying and physical abuse of J.P. at Drexel Hill Middle School, having received reports from J.P.'s family about the racially hostile environment at the school.

92. Notwithstanding this actual knowledge, Defendant Palladinoacted with deliberate, callous, and reckless indifference to J.P.'s constitutional rights. She took no action to investigate the bullying; no action to discipline the perpetrators; no action to protect J.P.; no action to oversee or correct Defendant Schiller's plain failure to intervene; and no action to remediate the racially hostile environment her own subordinates were permitting to escalate.

93. Defendant Palladino's conduct was the direct and proximate cause of the deprivation of J.P.'s clearly established right to equal protection under the Fourteenth Amendment, and was undertaken with deliberate, callous, and reckless indifference to that right.

### *Municipal Liability of the Upper Darby School District*

94. Defendant Upper Darby School District is a municipal entity subject to liability under 42 U.S.C. § 1983 pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), and its progeny.

95. The Upper Darby School District is liable for the deprivation of J.P.'s Equal Protection rights on each of three independent and mutually reinforcing theories of municipal liability.

### *Widespread Custom and Practice*

96.    Upon information and belief, at all times relevant to this Complaint, the Upper Darby School District has maintained a widespread custom and practice of tolerating racially motivated bullying and harassment of students of color within its schools and of failing to investigate, prevent, discipline, or remediate such bullying when reported.

97.    The Upper Darby School District's custom and practice of tolerating racially motivated peer harassment is evidenced by, among other things: (a) the District's failure to respond to the months-long pattern of racially motivated bullying of J.P. at Drexel Hill Middle School described in Paragraphs 18 through 33; (b) the failure of at least three Drexel Hill Middle School staff members to take any action to intervene during the eight-minute group assault on October 7, 2024 — instead choosing to stand by and watch; (c) Defendant Schiller's eyewitness inaction during the morning drop-off assault described above; (d) the District's failure, in its post-assault disciplinary disposition, to address the racial slurs used, the racial motivation of the conduct, or the racially hostile environment of which the assault was the foreseeable culmination; (e) the District's failure to discipline Abdullah notwithstanding direct eyewitness identification of him as a perpetrator; and (f) upon information and belief, other instances within the Upper Darby School District in which District officials have responded to reports of racially motivated bullying or harassment of students of color with similar deliberate indifference.

98.    This widespread custom and practice was so pervasive, persistent, and well-settled as to constitute the *de facto* policy of the Upper Darby School District. It was the moving force behind the deprivation of J.P.'s constitutional rights.

### ***Failure to Train and Supervise***

99.    The Upper Darby School District has failed adequately to train and supervise its employees, agents, and administrators — including Drexel Hill Middle School administrators,

teachers, and staff, and including Defendants Schiller and Palladino— concerning, among other things: (a) the identification of, response to, and investigation of racially motivated peer harassment; (b) the constitutional and statutory duty to provide students with equal access to educational opportunities free from race-based harassment; (c) the obligation to intervene in ongoing physical assaults on students under their supervision; (d) the obligation to render medical care, contact law enforcement, and notify parents and natural guardians in the immediate aftermath of a violent assault on a student on school property; (e) the implementation of protective supports for students with documented disabilities and IEPs; and (f) mandated reporting obligations under Pennsylvania law.

100.    The need for such training was, and remains, both obvious and well-recognized. The consequences of failing to provide such training — including the deprivation of students' constitutional rights to be free from racially motivated harassment and physical abuse — were, and remain, foreseeable and highly predictable.

101.    The Upper Darby School District's failure to train and supervise reflects a deliberate choice and constitutes deliberate indifference to the constitutional rights of students of color, including J.P.

102.    The Upper Darby School District's failure to train and supervise was the moving force behind the deprivation of J.P.'s constitutional rights and is independently sufficient to establish the District's liability under 42 U.S.C. § 1983.

### *Ratification by Final Policymakers*

103.    Upon information and belief, Daniel McGarry, in his capacity as Superintendent of the Upper Darby School District, and the Upper Darby School Board are the final policymakers for the Upper Darby School District with respect to matters of student discipline, anti-

discrimination policy, and the response of District officials to peer harassment and racial harassment within the District.

104.   Upon information and belief, the Superintendent and the Upper Darby School Board became aware of the racially motivated bullying of J.P., of the October 7, 2024 group assault, and of the District's response to those events — including the one-day suspension imposed on J.H., the failure to discipline Abdullah, the failure to investigate the racial dimension of the conduct, and the failure to undertake any meaningful follow-up with J.P. or his family — and approved, accepted, and acquiesced in that response.

105.   By approving, accepting, and acquiescing in the District's plainly inadequate response, and by failing to take any corrective action with respect to the District's customs, policies, and training even after this conduct came to their attention, the Superintendent and the Upper Darby School Board ratified the unconstitutional conduct of their subordinates and adopted that conduct as the de facto policy of the Upper Darby School District.

### *Causation and Damages*

106.   As a direct and proximate result of the acts and omissions of Defendants Upper Darby School District, Schiller, and Palladinoas set forth above, J.P. has suffered the violation of his clearly established right to equal protection under the Fourteenth Amendment; severe physical injuries, including a concussion, post-concussion syndrome, ongoing headaches, vertigo, and memory loss; severe psychological injuries, including symptoms of depression, anxiety, frequent nightmares, and post-traumatic stress disorder; the loss of educational benefits and educational opportunities; the necessity of withdrawing from his school district and relocating to another state in order to obtain a safe education; pain and suffering, embarrassment, and humiliation; and other compensable damages.

107. The conduct of all Defendants was undertaken in willful, wanton, and reckless disregard for J.P.'s clearly established constitutional rights, and was sufficiently egregious to warrant the imposition of punitive damages against them in their individual capacities under 42 U.S.C. § 1983.

**COUNT II**
**VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964**
**(Plaintiffs v. Defendant UDSD)**

108. Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

109. Title VI of the Civil Rights Act of 1964 provides that no person "shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. §200d.

110. At all times relevant to this Complaint, Defendant Upper Darby School District was, and remains, a recipient of federal financial assistance for the operation of its schools, including for the operation of Drexel Hill Middle School. The Upper Darby School District is therefore a covered entity under Title VI and is subject to its proscriptions and remedial provisions.

111. A funding recipient violates Title VI when it acts with deliberate indifference to known acts of race-based peer harassment that are so severe, pervasive, and objectively offensive that they effectively deprive the victim of access to the educational opportunities and benefits provided by the recipient.

### *Race-Based Harassment*

112. J.P. is an African American male and at all relevant times was a public school student of color within the Upper Darby School District.

113.    As set forth more fully above, J.P. was the target of a sustained, months-long campaign of race-based bullying, harassment, and physical abuse by his peers at Drexel Hill Middle School. The race-based nature of the harassment is established by, among other things: (a) the racial slurs that the perpetrators directed at J.P. during the October 7, 2024 group assault, including, but not limited to, "nigger," "monkey," and "bitch ass nigga"; (b) the use of racial slurs by other students who participated in the harassment of J.P. during arrival and dismissal periods at Drexel Hill Middle School; and (c) the singling out of J.P. — a thirteen-year-old African American student with a documented disability and no history of conflict with the perpetrators — for sustained, group physical abuse on school property.

### *Severe, Pervasive, and Objectively Offensive Harassment*

114.    The race-based harassment of J.P. was severe, pervasive, and objectively offensive within the meaning of Title VI. It included, among other things: (a) repeated physical strikes during scheduled hallway transitions between classes; (b) repeated incidents of pushing, shoving, and physical attack in the school's drop-off area in the immediate presence of family members; (c) the theft of J.P.'s personal property, including his Chromebook, his lunchbox, and his backpack; (d) a prolonged morning drop-off attack involving the use of J.P.'s own jacket as a weapon by two students against him; (e) the use of racial slurs in connection with the harassment; and (f) a violent, premeditated, eight-minute group assault on school property on October 7, 2024 during which J.P. was punched, kicked, beaten, and thrown to the ground by at least four students twice in succession while racial slurs were shouted at him.

115.    The race-based harassment was sufficiently severe, pervasive, and objectively offensive that, well before October 7, 2024, J.P.'s mother, A.P., could not safely drop her son off at

school without exiting her vehicle to intervene, and E.M. was forced to physically intervene in a prolonged morning assault on her grandson in the school's drop-off area.

### *The District's Actual Knowledge*

116.   The Upper Darby School District, through its officials with authority to take corrective action — including Defendant Schiller, the Assistant Principal of Drexel Hill Middle School and the Local Education Agency Representative on J.P.'s IEP team, and Defendant Palladino, the Principal of Drexel Hill Middle School — had actual knowledge of the race-based harassment of J.P. prior to the October 7, 2024 assault.

117.   The District's actual knowledge is established by, among other things: (a) reports made by A.P. and E.M. to Defendants Schiller and Palladinoconcerning the bullying and harassment of J.P.; (b) Defendant Schiller's own direct eyewitness observation of the morning drop-off assault described above, during which Defendant Schiller made eye contact with E.M. watching, as she screamed for staff attention while physically intervening in an ongoing assault on her grandson; (c) A.P.'s contemporaneous written report submitted to Defendant Schiller on October 8, 2024, identifying the perpetrators by name, describing the pattern of bullying, describing the October 7th assault itself, and stating, in plain terms: "My son has been bullied and physically assaulted for at least a month!"; and (d) the District's own video footage of the October 7, 2024 assault, the existence of which Defendant Schiller has acknowledged in writing.

### *The District's Substantial Control Over the Harassers and the Context*

118.   The Upper Darby School District, through its agents and employees at Drexel Hill Middle School, exercised substantial control over both J.P.'s harassers and the contexts in which the harassment occurred. All of the harassment described in this Complaint took place on Upper Darby School District property — in the school's hallways, in the school's drop-off area, on the

school's track field — during school hours, and was perpetrated by students enrolled at Drexel Hill Middle School who were subject to the District's disciplinary authority.

### *The District's Deliberate Indifference*

119.    The Upper Darby School District acted with deliberate indifference to the race-based harassment of J.P. The District's response — or rather, its non-response — to its actual knowledge of the harassment was clearly unreasonable in light of the known circumstances.

120.    Prior to the October 7, 2024 assault, the District took no meaningful action to investigate, prevent, discipline, or remediate the racially motivated bullying of J.P. — notwithstanding repeated reports and notwithstanding Defendant Schiller's eyewitness observation of an ongoing physical assault on J.P., which he willfully ignored.

121.    During the October 7, 2024 assault itself, at least three Drexel Hill Middle School staff members watched J.P. be beaten and racially abused for approximately eight minutes — and chose to do nothing. The attack ended only when an eighth-grade student physically intervened.

122.    Following the October 7, 2024 assault, the District compounded its deliberate indifference. The District failed to summon medical care for J.P., failed to contact J.P.'s parents or E.M., and failed to contact law enforcement. The District's eventual disciplinary disposition — a one-day suspension imposed on a single perpetrator nearly four weeks after the assault — completely failed to address the racial dimension of the conduct, the racial slurs that had been used, the racially hostile environment of which the assault was the foreseeable culmination, or the role of other identified perpetrators. The District never acknowledged in its disciplinary disposition that race-based harassment had occurred at all.

123.    The District's deliberate indifference caused J.P. to undergo further race-based harassment and made him vulnerable to it. The District's response — or absence of one — allowed

the racially hostile environment at Drexel Hill Middle School to continue unchecked, to escalate from verbal harassment to repeated physical attacks, and to culminate in the violent group assault of October 7, 2024.

### *Effective Denial of Educational Opportunities and Benefits*

124.    The race-based harassment to which the Upper Darby School District was deliberately indifferent was so severe, pervasive, and objectively offensive that it effectively denied J.P. equal access to the educational opportunities and benefits afforded by the District. J.P. was so terrified of returning to Drexel Hill Middle School that he was forced to leave the brick-and-mortar school environment entirely. Even in the virtual environment to which he transitioned, J.P. could not escape the racially hostile environment Defendants had permitted to develop at Drexel Hill Middle School, because one of his attackers from the October 7th assault appeared in his virtual classes. Ultimately, J.P.'s family was required to withdraw him from the Upper Darby School District and relocate him to a different school in a different state in order to secure for him a safe education.

### *Causation and Damages*

125.    As a direct and proximate result of the Upper Darby School District's deliberate indifference to severe, pervasive, and objectively offensive race-based peer harassment of J.P., in violation of Title VI of the Civil Rights Act of 1964, J.P. has suffered severe physical injuries, including a concussion, post-concussion syndrome, ongoing headaches, vertigo, and memory loss; medical, neurological, and therapeutic expenses, past and future; the loss of educational opportunities and educational benefits, including the loss of access to in-person instruction at his neighborhood school; the costs, burdens, and disruption associated with the relocation of J.P. to a

different school in a different state in order to obtain a safe education; and other compensable damages.

**COUNT III**
**VIOLATIONS OF §504 OF THE REHABILITATION ACT**
**29 U.S.C. § 794**
**(Plaintiffs v. Defendant UDSD)**

126.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

127.    Section 504 of the Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

128.    At all times relevant to this Complaint, Defendant Upper Darby School District was, and remains, a recipient of federal financial assistance for the operation of its schools, including for the operation of Drexel Hill Middle School. The Upper Darby School District is therefore a covered entity under Section 504 of the Rehabilitation Act.

### *J.P.'s Qualifying Disability*

129.    J.P. is, and at all relevant times has been, an individual with a disability within the meaning of Section 504. As more fully set forth above, the Upper Darby School District has determined — through its own evaluations, its own IEP team, and its own written documentation — that J.P. qualifies for special education services under the primary disability category of Other Health Impairment based, in part, on a medical diagnosis of Attention Deficit Hyperactivity Disorder.

130.    J.P.'s disability substantially limits one or more of his major life activities, including, but not limited to, learning, concentrating, attending to instruction, regulating emotions, and managing social interactions.

### J.P.'s "Otherwise Qualified" Status

131.    Despite his disability, J.P. was at all relevant times an otherwise qualified individual to participate in the educational programs offered by the Upper Darby School District. The District has expressly so determined, having at all relevant times placed J.P. in the general education environment at Drexel Hill Middle School with supplementary aids and services.

### The District's Documented Knowledge of J.P.'s Disability-Related Vulnerability

132.    The District's IEP for J.P. expressly identified, among other things: (a) J.P.'s history of traumatic events, which the District's own IEP team determined "impact his ability to appropriately cope and attend to the lesson within the general education environment"; (b) J.P.'s need for specially designed instruction to improve his social skills; (c) J.P.'s need for specially designed instruction to improve his executive functioning; and (d) the District's commitment to provide J.P., on a daily basis and in all instructional environments, with access to a school counselor and social worker, preferential seating, verbal and non-verbal redirection, positive reinforcement, and other social-emotional supports.

133.    Defendant Schiller, Assistant Principal of Drexel Hill Middle School, served as the Local Education Agency Representative on J.P.'s IEP team. The Upper Darby School District's knowledge of J.P.'s disability and disability-related needs was therefore not abstract or institutional alone — it was held personally and in writing by the very administrator with line authority over J.P.'s school and front-line responsibility for the student-safety reports concerning J.P.

### The District's Discrimination by Reason of Disability

134. Notwithstanding the Upper Darby School District's documented knowledge of J.P.'s disability and his disability-related vulnerability to peer harm, the District excluded J.P. from participation in, denied him the benefits of, and subjected him to discrimination under its educational programs, by reason of his disability.

135. The District's discrimination by reason of disability is established by, among other things: (a) the District's failure to take any meaningful action to protect J.P. from foreseeable peer harassment and physical abuse, despite the District's own written documentation that J.P.'s disability made him particularly vulnerable to peer victimization; (b) Defendant Schiller's willful disregard of an ongoing physical assault on J.P. in the school drop-off area, notwithstanding Defendant Schiller's signed-on knowledge of J.P.'s identity, his disability, and his documented social-emotional vulnerabilities; (c) the District's affirmative choice not to take obvious and available protective measures — including, but not limited to, enhanced supervision of J.P. during arrival, hallway transitions, and dismissal periods; meaningful intervention with the identified perpetrators; consultation with the school counselor and social worker concerning the documented bullying; and other reasonable steps — that were commensurate with the disability-related vulnerabilities the District itself had documented; (d) the failure of at least three Drexel Hill Middle School staff members to intervene in an eight-minute group assault on a thirteen-year-old student with a documented disability — a student for whom these staff bore an enhanced duty of supervision and care by reason of his disability; and (e) the District's failure to provide medical care, contact emergency personnel, or notify J.P.'s family in the immediate aftermath of a violent assault that left J.P. with visible head trauma, shoe prints on his chest, and turf stains on his clothing — a failure that fell with particular weight upon a student whose disability documentation expressly identified his need for adult social-emotional support.

### *The District's Deliberate Indifference*

136.    The Upper Darby School District's conduct constitutes intentional discrimination within the meaning of Section 504, which in the Third Circuit may be established by deliberate indifference to a known harm or to a strong likelihood that a violation of federally protected rights will result from the District's chosen course of conduct.

137.    The District's deliberate indifference is demonstrated by its actual, written, and contemporaneous knowledge of J.P.'s disability, of his documented vulnerability to peer harm, of the months-long pattern of bullying directed at him, and of the October 7, 2024 group assault — combined with the District's affirmative choice not to take obvious remedial steps that were within the District's authority and capacity to take.

### *The District's Deliberate Indifference*

138.    The Upper Darby School District's conduct constitutes intentional discrimination within the meaning of Section 504, which in the Third Circuit may be established by deliberate indifference to a known harm or to a strong likelihood that a violation of federally protected rights will result from the District's chosen course of conduct.

139.    The District's deliberate indifference is demonstrated by its actual, written, and contemporaneous knowledge of J.P.'s disability, of his documented vulnerability to peer harm, of the months-long pattern of bullying directed at him, and of the October 7, 2024 group assault — combined with the District's affirmative choice not to take obvious remedial steps that were within the District's authority and capacity to take.

140.    The District's deliberate indifference is demonstrated by its actual, written, and contemporaneous knowledge of J.P.'s disability, of his documented vulnerability to peer harm, of the months-long pattern of bullying directed at him, and of the October 7, 2024 group assault —

combined with the District's affirmative choice not to take obvious remedial steps that were within the District's authority and capacity to take130. As a direct and proximate result of the Upper Darby School District's discrimination by reason of J.P.'s disability, J.P. was effectively denied the benefits of, and equal access to, the educational opportunities provided by the District. J.P. was forced out of the in-person school environment, then out of the District entirely, and ultimately out of the Commonwealth, in order to obtain a safe education.

### *Causation and Damages*

141.    As a direct and proximate result of the Upper Darby School District's discrimination by reason of J.P.'s disability, in violation of Section 504 of the Rehabilitation Act of 1973, J.P. has suffered severe physical injuries, including a concussion, post-concussion syndrome, ongoing headaches, vertigo, and memory loss; medical, neurological, and therapeutic expenses, past and future; the loss of educational opportunities and educational benefits, including the loss of access to in-person instruction at his neighborhood school; the costs, burdens, and disruption associated with the relocation of J.P. to a different school in a different state in order to obtain a safe education; and other compensable damages.

### COUNT IV
### VIOLATION OF TITLE IX OF THE AMERICANS WITH DISABILITIES ACT
### (Plaintiffs v. Defendant UDSD)

142.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

143.    Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

144. Defendant Upper Darby School District is a "public entity" within the meaning of Title II of the ADA. See 42 U.S.C. § 12131(1)(B). As a Pennsylvania public school district, the Upper Darby School District is an instrumentality of state and local government and is therefore subject to Title II's proscriptions and remedial provisions.

### *J.P.'s Status as a Qualified Individual With a Disability*

145. J.P. is, and at all relevant times has been, a qualified individual with a disability within the meaning of the Americans with Disabilities Act. As set forth more fully above, J.P. has been determined by the Upper Darby School District itself to qualify for special education services under the primary disability category of Other Health Impairment based, in part, on a medical diagnosis of Attention Deficit Hyperactivity Disorder. J.P.'s disability substantially limits one or more of his major life activities, including, but not limited to, learning, concentrating, attending to instruction, regulating emotions, and managing social interactions.

146. Despite his disability, J.P. was at all relevant times an otherwise qualified individual entitled to receive the educational services, programs, and activities provided by the Upper Darby School District.

### *The District's Discrimination by Reason of Disability*

147. The Upper Darby School District excluded J.P. from participation in, denied him the benefits of, and subjected him to discrimination under its services, programs, and activities, by reason of his disability.

148. The Upper Darby School District's discrimination by reason of disability is established by, among other things: (a) the District's failure to take any meaningful action to protect J.P. from foreseeable peer harassment and physical abuse, despite the District's own written documentation that J.P.'s disability made him particularly vulnerable to peer victimization; (b) the

District's failure to make reasonable modifications to its supervisory practices, disciplinary procedures, anti-bullying response protocols, and student-safety practices to accommodate J.P.'s documented disability-related vulnerabilities, where such modifications were necessary to avoid discrimination against J.P. on the basis of disability; (c) Defendant Schiller's willful disregard of an ongoing physical assault on J.P. in the school drop-off area, notwithstanding Defendant Schiller's signed-on knowledge of J.P.'s identity, his disability, and his documented social-emotional vulnerabilities; (d) the District's affirmative choice not to take obvious and available protective measures — including, but not limited to, enhanced supervision of J.P. during arrival, hallway transitions, and dismissal periods; meaningful intervention with the identified perpetrators; consultation with the school counselor and social worker concerning the documented bullying; and other reasonable steps — that were commensurate with the disability-related vulnerabilities the District itself had documented; (e) the failure of at least three Drexel Hill Middle School staff members to intervene in an eight-minute group assault on a thirteen-year-old student with a documented disability — a student for whom these staff bore an enhanced duty of supervision and care by reason of his disability; and (f) the District's failure to provide medical care, contact emergency personnel, or notify J.P.'s family in the immediate aftermath of a violent assault that left J.P. with visible head trauma, shoe prints on his chest, and turf stains on his clothing — a failure that fell with particular weight upon a student whose disability documentation expressly identified his need for adult social-emotional support.

### *The District's Deliberate Indifference*

149.    The Upper Darby School District's conduct constitutes intentional discrimination within the meaning of Title II of the ADA, which — like Section 504 of the Rehabilitation Act, whose remedies, procedures, and rights are expressly incorporated by Title II — may be

established by deliberate indifference to a known harm or to a strong likelihood that a violation of federally protected rights will result from the public entity's chosen course of conduct.

150.    The Upper Darby School District's deliberate indifference is demonstrated by its actual, written, and contemporaneous knowledge of J.P.'s disability, of his documented vulnerability to peer harm, of the months-long pattern of bullying directed at him, and of the October 7, 2024 group assault — combined with the District's affirmative choice not to take obvious remedial steps that were within the District's authority and capacity to take.

### *Effective Denial of Public Services, Programs, and Activities*

151.    As a direct and proximate result of the Upper Darby School District's discrimination by reason of J.P.'s disability, J.P. was effectively denied the benefits of, and equal access to, the services, programs, and activities provided by the District. J.P. was forced out of the in-person school environment, then out of the District entirely, and ultimately out of the Commonwealth, in order to obtain a safe education.

### *Causation and Damages*

152.    As a direct and proximate result of the Upper Darby School District's discrimination by reason of J.P.'s disability, in violation of Title II of the Americans with Disabilities Act, J.P. has suffered severe physical injuries, including a concussion, post-concussion syndrome, ongoing headaches, vertigo, and memory loss; medical, neurological, and therapeutic expenses, past and future; the loss of educational opportunities and educational benefits, including the loss of access to in-person instruction at his neighborhood school; the costs, burdens, and disruption associated with the relocation of J.P. to a different school in a different state in order to obtain a safe education; and other compensable damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, in consideration of the above claims, Plaintiff E.M. on behalf of minor Plaintiff J.P. requests that a jury be selected to hear this case and render a verdict for the Plaintiffs, and against the Defendants, and that the jury selected award damages to Plaintiffs in an amount which will effectively prevent other similarly caused acts and adequately reflects the enormity of the Defendants' wrong and injuries to the Plaintiffs due to the Defendants' conduct, including but not limited to:

    a.  All available compensatory damages for the described losses with respect to each cause of action;

    b.  Past and future medical expenses, as well as the costs associated with past and future life care;

    c.  Past and future lost wages and loss of earning capacity;

    d.  Past and future emotional distress;

    e.  Consequential and/or special damages

    f.  All available non-economic damages, including without limitation pain, suffering, and loss of enjoyment of life;

    g.  Punitive damages with respect to each cause of action where allowed;

    h.  Reasonable and recoverable attorney's fees;

    i.  Costs of this action; and

    j.  Pre-judgment and all other interests recoverable

Further, Plaintiffs requests that the Court enter judgment consistent with the jury's verdict and prays for any other damages and equitable relief that Court or jury deems appropriate under the circumstances.

Respectfully Submitted,

BY: _____

Gaetano A. D'Andrea, Esquire (Pa. ID No. 208905)
Ragha Narasimhan, Esquire (Pa. ID No. 369721)
Jacob Warner, Esquire (Pa. ID No. 337788)
LAFFEY BUCCI D'ANDREA REICH & RYAN
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
Telephone: (215) 399-9255
Facsimile (215) 841-8700
Email: CVGDTeam@laffeybucci.com

*Attorneys for Plaintiffs*

Date: June 2,  2026

37

**VERIFICATION**

I, E.M., hereby states that she is the Plaintiff in with within action and verifies that the statements made in the foregoing Complaint are true and correct to the best of her knowledge, information and belief. The undersigned understands that the statements made herein are subject to the penalties of 18 Pa. C.S. 4904, relating to unsworn falsification to authorities.

$\mathcal{E}\,\mathsf{M}$

_____
E.M., Plaintiff

Date:___05/28/2026_____